# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| PAT GODIN, | ) |
| Plaintiff | ) ) ) |
| v. | ) Docket No. 9-cv-77-JAW |
| SCHOOL UNION 134, et al. | ) ) ) |
| Defendants | ) ) |

## DEFENDANTS NICELY, SCHENCKS AND METTA
## SPECIAL MOTION TO DISMISS

Defendants Patty Schencks, Donna Metta and Joleen Nicely hereby move to dismiss the Complaint against them pursuant to 14 M.R.S.A. § 556, Maine's so-called anti-SLAPP statute. In support of this motion, Defendants rely on the Declarations of Defendants Nicely, Schencks, and Metta filed contemporaneously hereto.

**I.  INTRODUCTION AND SUMMARY OF ARGUMENT**

This lawsuit, because it is grounded entirely on constitutionally protected speech and petitioning activity, is plainly subject to dismissal under 14 M.R.S.A. § 556. Where § 556 applies, "dismissal is mandated unless the plaintiff shows that she suffered actual injury and that the defendant acted without any reasonable factual support or arguable basis in law." *Schelling v. Lindell*, 2008 ME 59, ¶ 16, 942 A.2d 1226, 1231. Plaintiff does not and cannot make the required showing here, thus this Court should dismiss Plaintiff's Complaint against Defendants Nicely, Schencks, and Metta.

Plaintiff has asserted a claim with five counts, only two of which are the subject of this special motion to dismiss. Counts I and II assert claims under 42 U.S.C. § 1983 and for breach of contract, respectively, against the Machiasport School Department. Since those claims are not asserted against Defendants Nicely, Schencks and Metta, they are not addressed by this motion. Count V purports to assert a claim for punitive damages. Since, under Maine law, a punitive damages claim does not constitute an independent cause of action but is rather a remedy available in certain tort actions, it also is not addressed by this motion.[1] *Fiacco v. Sigma Alpha Epsilon Fraternity*, 484 F. Supp. 2d 158, 177 (D. Me. 2007).

Instead, this motion is directed to Count III, which asserts a claim for tortious interference with advantageous contractual relationships, and Count IV, which asserts a claim for defamation. Those counts are asserted solely against the individual Defendants Nicely, Schencks and Metta. Those claims implicate the core public policies behind the passage of 14 M.R.S.A. § 556, which arises out of the First Amendment to the United States Constitution and is intended to encourage, promote and protect citizens who testify to and petition their government, including the executive branches of government. The Complaint is a quintessential example of an improper attempt to punish an individual for exercising his or her constitutionally protected right to petition one's government by providing information to it. Courts have long protected the right to petition regardless of the petitioner's intent or the manner in which the petitioner presents its claims. *See, e.g., United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967) (stating that the right to petition for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights."). Indeed, 14 M.R.S.A. § 556 recognizes that

---

[1] Nevertheless, should the Court decide to dismiss Counts III and IV against Defendants Nicely, the Court should also dismiss Count V against those Defendants because, as noted, that count does not assert an independently viable cause of action.

petitioners generally are persons who, by definition, are attempting to influence governmental action. Regardless of whether the claims are couched in terms of a claim of defamation or tortious contractual interference, the conduct of petitioning the government is a First Amendment right embodied in and protected by § 556.

## II. FACTS

The declarations of the individual Defendants which accompany this motion establish the following facts:

### A. FACTS AS TO DEFENDANT JOLEEN NICELY

In January 2007, Defendant Joleen Nicely was the school secretary at Fort O'Brien School, an elementary school in Machiasport, Maine. (Declaration of Joleen Nicely ("Nicely Dec."), Ex. A.) Plaintiff Pat Godin was the school principal. (*Id.*)

On two occasions in January, 2007, Ms. Nicely witnessed Ms. Godin treat a non-communicative eight year-old boy with special needs in a way that, in her opinion, was inappropriate and abusive. (*Id.*) On one occasion, she witnessed Ms. Godin grab the child by his feet, pull off his high-top sneakers without untying them, and then roughly drag him from one room to another before throwing him onto the floor, making him cry. (*Id.*) On another occasion, she witnessed Ms. Godin drag the same crying eight year-old boy into her office, before throwing him down hard onto a bean bag chair, causing his neck to whip back and making him cry harder. (*Id.*)

Ms. Nicely regarded Ms. Godin's treatment of this child on both of these occasions as inappropriate and abusive. (*Id.*) She reported it to the Superintendent of Schools in 2007 so that what she had witnessed could be properly considered and addressed by the Superintendent and

3

School Board.  (*Id.* ¶ 6.)  She also understood that, as a school employee herself, she was obligated to report what she had seen because she felt it was abusive to this child.  (*Id.* ¶ 4.)

In 2008, Ms. Nicely was invited to speak to the Machiasport School Board, in executive session, and tell them what she had seen.  (*Id.* ¶ 6.)  Prior to that School Board meeting, a group of other concerned citizens and parents had organized a meeting at the town office in order to enlist public participation in encouraging the School Board to consider and address concerns about Ms. Godin's conduct as school principal.  (*Id.*)  Ms. Nicely attended that meeting in order to be informed about and participate in that process because of her concerns.  (*Id.*)  In addition, as part of a general investigation by the School Board concerning Ms. Godin, Ms. Nicely was interviewed by its investigators, Mr. Norton and Mr. Goodman, and informed them of what she had witnessed herself.  (*Id.*)  The accompanying Declaration of Joleen Nicely, filed with this special motion to dismiss, includes the written statement that she provided to the Board and its investigators and accurately reflects what she saw and told them.  (*Id.* ¶ 5, Ex. A.)

All of Ms. Nicely's statements were true and reasonably grounded upon her own observations of Ms. Godin's conduct as school principal.  (*Id.* ¶ 7.)  She accurately reported what she had seen in order to inform and petition the Superintendent of Schools and School Board so that they could properly review and consider the matter, and address it consistent with their obligations as the government officials ultimately responsible for the safety of all children at the Machiasport elementary school and the proper supervision of the school officials in whose care those children are entrusted.  (*Id.* ¶¶ 6–7.)

## B. FACTS AS TO DEFENDANT PATTY SCHENCKS

Contrary to the allegations in the Complaint, all the statements made by Patty Schencks about the plaintiff and which are the subject of this lawsuit were made based on events that Patty Schencks personally witnessed. (Declaration of Patty Schencks ("Schencks Dec."), ¶ 4) At the time of the alleged events Patty Schencks was is an administrative assistant in the office at Fort O'Brien School. (*Id. ¶* 3) In December 2007, while working in the office at the school, Ms. Schencks got a call from Ms. Ragot, a substitute kindergarten teacher at the school. (*Id.*, ¶ 5.) Ms. Ragot was calling from her classroom to report a problem she was having with a 4-year old child. (*Id.*) This student had been something of a behavior problem in the class in the past, and Ms. Ragot was calling the office for assistance so she could attend to the needs of the other students. (*Id.*) Ms. Godin was in the office, which was directly behind where Schencks sat, and overheard Schencks' end of the call. (*Id.*) When Schencks said to Ms. Ragot something to the effect of, "Ok, I will be right down," Ms. Godin asked Schencks what was happening. (*Id.*) Schencks told Ms. Godin about the call, gave her the child's name, and said that the child was refusing to take her coat off and join her classmates and was generally being disruptive. (*Id.*) Ms. Godin immediately set off for the classroom, followed by Schencks. (*Id.*) Godin arrived at the classroom before Schencks. (*Id.*)

When Schencks arrived at the classroom, she could see that the problem was that the child did not want to come back into the classroom from an outdoor recess. (*Id.* ¶ 6.) The child was crying and screaming and being very disruptive. (*Id.*) Before Schencks could do anything to help, she saw Ms. Godin grab the child and scream at her right in her face. (*Id.*) The child was crying and saying that she did not want to come inside from recess. (*Id.*) Schencks saw

5

Godin take the child by the coat and shove her out the door to the outside. (*Id.*) Godin yelled at the child words to the effect of, "If you want to scream, scream outside. No one wants to listen to it and you are disrupting your classmates." (*Id.*) She closed the door behind the child and refused to let the 4-year old in the building. (*Id.*) After a couple of minutes, Ms. Godin turned to Ms. Daniels, another teacher at the school, and said, "You can handle it now." (*Id.*) Ms. Godin left and went back to her office. (*Id.*) These facts are evidenced both by the declaration of Ms. Schencks and by that of Ms. Daniels, who has also submitted a declaration in support of this motion and agrees with Ms. Schencks' description of the event. (Declaration of Laura Daniels, ¶ 3.)

Naturally, Schencks was very upset by what she saw and thought Godin's behavior was completely inappropriate and perhaps abusive to this little child. (Schencks Dec., ¶ 7.) Because Schencks was not sure what to do, she raised the subject to Joleen Nicely. (*Id.* ¶ 8.) Nicely and Schencks discussed what they had each seen in different events involving Ms. Godin and in which they thought Godin was also abusive to young children. (*Id.*)

After discussing the issue with Nicely, Schencks decided she needed to call the Maine Department of Health and Human Services to report what she had seen and to ask them what she should do. (*Id.* ¶ 9.) Schencks was aware that as an employee of the school she had a legal responsibility to report child abuse and she knew generally that such reports were to be made to that department. (*Id.*) She believed that what she had seen constituted abuse and believed she had a legal responsibility to report it. (*Id.*) With that understanding, a couple of weeks after the incident, Schencks called the Department of Health and Human Services. (*Id.* ¶ 10.) Schencks

6

spoke to a woman who told her that she should call the State Police to report what she had seen. (*Id.*)

Based on that advice, and on that same day, Schencks called the State Police barracks nearest to the school. (*Id.* ¶ 11.) She spoke to Trooper Andy Foss. (*Id.*) He asked Schencks to prepare a written statement in her own words. (*Id.*) At his request, Schencks wrote a statement and when the statement was ready she called Trooper Foss who came by the school later that day to pick it up. (*Id.* ¶ 11.)

Sometime later Schencks was contacted by a man named Omar Norton who identified himself as an investigator for the school department. (*Id.* ¶ 12.) He did not ask Schencks any questions about the incident involving the child, telling her that the matter was being handled by the State Police such that he, Norton, did not need to know about it. (*Id.*) Also, at around that same time Schencks was contacted by Jonathan Goodman who identified himself as a lawyer for the School Department. (*Id.* ¶ 13.) At his request, Schencks gave him a summary of what she had seen in the incident involving the child and Ms. Godin. (*Id.*)

Schencks made her reports to the Department of Health and Human Services, the State Police and Mr. Goodman in the belief that it was her legal obligation to report what she had seen to the proper executive authorities. (*Id.* ¶ 14.) She made the reports with the good-faith intention to have those authorities take the action that they thought was legally appropriate. (*Id.*)

Regarding the facts alleged in this case as they concern Ms. Scnencks, the Complaint contains two major errors. First, contrary to the allegations in Paragraph 17 of the complaint, Schencks did not attend two public meetings at the Machiasport Town Offices on March 22 and April 5, 2008 at which it is alleged that Schencks made statements about Ms. Godin. (*Id.* ¶ 15.)

The allegation in the complaint is untrue. (*Id.*) Schencks did not attend any such meeting on or about those dates and, since she was not there, she obviously made no statements. (*Id.*)

Similarly, the allegations in Paragraph 22 of the complaint are untrue. (*Id.* ¶ 16.) That paragraph alleges that Schencks talked to a crowd of people outside a School Board meeting on April 8, 2008. (*Id.*) Schencks did attend the board meeting but did not speak either to the board or any people outside the meeting. (*Id.*)

### C. FACTS AS TO DEFENDANT DONNA METTA

In 2007, Defendant Donna Metta was a long-term substitute teacher at Fort O'Brien School. (Declaration of Donna Metta ("Metta Dec."), ¶ 2.) Plaintiff Pat Godin, the school's principal, was Ms. Metta's direct supervisor. (*Id.* ¶ 5.)

In January 2007, Ms. Metta was working as a one-on-one aide to a seven-year old boy with special needs. (*Id.* ¶¶ 3–4.) On two occasions, Ms. Metta witnessed Ms. Godin treat the young boy in a way that, in her opinion, was inappropriate and abusive. (*Id.* ¶¶ 5–6, 8.) On one occasion, she witnessed Ms. Godin grab the child and drag him from the child's classroom to another room. (*Id.* ¶ 8.) When she arrived at the second room, Ms. Godin physically pushed the child into the room and threw him to the floor. (*Id.*) On another occasion, Ms. Metta witnessed Ms. Godin forcefully grab the same child, lifting his upper body off of the bean bag he was sitting in, and slam him back down onto the beanbag. (*Id.* ¶ 7.) Ms. Godin told the child, "that's what you get – I've had enough of your crap today." (*Id.*) The details of what she observed, and later reported, can be found in Exhibits A and B to the accompanying Declaration of Donna Metta, which is filed in support of this motion. (*Id.*, Ex. A and B.)

Ms. Metta regarded Ms. Godin's treatment of this child on both of these occasions as inappropriate and abusive. (*Id.* ¶¶ 7–8.) She reported it to Ms. Godin's supervisor, the Superintendent of Schools, in April 2007 so that what she had witnessed could be properly considered and addressed by the Superintendent. (*Id.* ¶ 9.)

In 2008, as part of a general investigation by the School Board concerning Ms. Godin, Ms. Metta was interviewed by the School Board's investigators, Omar Norton and Jonathan Goodman. (*Id.* ¶¶ 10–11, 13.) During the same time period, Ms. Metta was interviewed by an investigating officer from the State Police. (*Id.* ¶ 12.) Ms. Metta told each of investigators about the conduct that she had witnessed and provided them with her written statements concerning Ms. Godin's conduct, which are attached to the accompanying Declaration of Donna Metta as Exhibits A and B. (*Id.*, Ex. A and B.)

All of Ms. Metta's statements were true and firmly grounded upon her own observations of Ms. Godin's conduct as school principal. (*Id.* ¶¶ 7–8.) She accurately reported what she had seen in order to inform the Superintendent of Schools, School Board, and their investigators so the Superintendent and the School Board could properly review and consider the matter. (*Id.* ¶¶ 9–13.)

III. ARGUMENT

All the foregoing statements made by the individual defendants are exactly the type of free speech that is protected and encouraged by both the First Amendment to the United States Constitution and Article 1, section 15 of the Maine Constitution, and which 14 M.R.S.A. § 556 dictates cannot form the basis for any civil claims or lawsuits. Educators are entitled, if not

required, to bring their concerns about child abuse by a school principal to a supervisory superintendent and school board without having to defend themselves against such lawsuits.

As discussed below, none of the foregoing statements could lead to liability for libel or defamation under the laws of Maine. All of those statements -- even if Plaintiff offers evidence that the teachers were ultimately incorrect in their collective belief that Ms. Godin's conduct constituted child abuse -- fall squarely within the ambit of 14 M.R.S.A. § 556, since the Defendants' petitions were made on reasonable factual and legal grounds. Further, as discussed below, Plaintiff Godin is a public figure, which places an even higher burden on her to demonstrate that Defendants' petitioning activities were improper. Accordingly, review of the affidavits of Nicely, Schencks and Metta leads inexorably to the conclusion that Plaintiff's Complaint is an impermissible assault on the Defendants' exercise of their right to petition and must be dismissed pursuant to 14 M.R.S.A. § 556.

### A. THE COMPLAINT AGAINST THE DEFENDANTS MUST BE DISMISSED BECAUSE THE DEFENDANTS HAD BOTH A REASONABLE FACTUAL AND LEGAL BASIS FOR THEIR STATEMENTS

#### 1. The Statutory Scheme Under Section 556

The right to petition government is protected in Maine by statute as well as by the state and federal Constitutions. Pursuant to 14 M.R.S.A. § 556, a party may file a special motion to dismiss when "the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine." 14 M.R.S.A. § 556. The Court <u>must</u> dismiss such claims unless the plaintiff can prove that the defendant's statements lacked any reasonable factual support:

> When a moving party asserts that the civil claims, counterclaims or cross claims against the moving party are based on the moving party's exercise of the moving party's right of petition under the Constitution of the United States or the Constitution of Maine, the moving party may bring a special motion to dismiss. The court shall advance the special motion so that it may be heard and determined with as little delay as possible. The court shall grant the special motion, unless the party against whom the special motion is made shows that the moving party's exercise of its right of petition was devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual injury to the responding party.

14 M.R.S.A. § 556.

In situations such as that presented here, the statute works as follows: The Court is to consider only the facts alleged in the Complaint and any affidavits submitted by the parties. *Id.* The initial burden is on the defendant to show that the Complaint is based on actions taken by the defendant in pursuit of his right of petition. *Lindell*, 2008 ME 59, ¶ 7, 942 A.2d at 1229. Upon such a showing, the burden shifts to the plaintiff, to show <u>both</u> (1) a lack of any reasonable factual support or arguable basis in law for defendant's statements, <u>and</u> (2) actual injury to the plaintiff from those statements. 14 M.R.S.A. § 556; *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 20, 772 A.2d 842, 849. Unless the plaintiff can demonstrate both lack of reasonable factual support/arguable legal basis <u>and</u> actual injury, the complaint must be dismissed, in which event the Court may award the moving party costs and reasonable attorneys' fees. 14 M.R.S.A. § 556.

Importantly, the statute defines "a party's exercise of its right of petition" in a broad manner, including the following types of statements:

1) Any written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding;
2) Any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body, or any other governmental proceeding;

> 3) Any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding;
> 4) Any statement reasonably likely to enlist public participation in an effort to effect such consideration; and
> 5) Any other statement calling within the constitutional protection of the right to petition government.

*Id*. (numbering and formatting added).

A plaintiff's proof requirements in response to a properly filed special motion to dismiss under Title 14 M.R.S.A. § 556 are far more onerous than under an ordinary motion to dismiss pursuant to Rule 12(b)(6). In a typical 12(b)(6) motion to dismiss, all well-pleaded material allegations of fact must be assumed to be true, with legal conclusions and baseless assertions disregarded. Fed. R. Civ. P. 12(b)(6); *Gray v. Evercore Restructuring LLC*, 544 F.3d 320, 324 (1st Cir. 2008). If -- taking the allegations of fact in the light most favorable to the plaintiff -- the complaint does not entitle the plaintiff to relief, it must be dismissed. *Gray,* 544 F.3d at 324.

In the context of a special motion to dismiss under 14 M.R.S.A. § 556, however, the ordinary inference in favor of the plaintiff is reversed and instead favors the defendant:

> When reviewing the [special motion to dismiss], the Court should view the evidence in the light most favorable to the moving party because the responding party bears the burden of proof when the statute applies.

*Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 18, 772 A.2d 842, 849. In the context of a properly-asserted special motion to dismiss, therefore, all reasonable inferences must be drawn in the *defendant's* favor. When evaluated from this perspective, the evidence set forth by the individual Defendants and summarized below demands dismissal of Counts III and IV of the Complaint.

## 2. The Allegations Against Each of the Defendants All Relate To Defendants' Right To Petition, And Thus § 556 Applies.

Applying the legal principles summarized above to the relevant allegations in the Complaint leads inexorably to the conclusion that the statements made by each of the individual Defendants were a clear exercise of the Defendants' "right to petition" as defined in § 556. Section 556 applies, among other things, to:

> [A]ny statement reasonably likely to encourage consideration or review of an issue by a legislative, executive or judicial body, or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration, and any other statement calling within the constitutional protection of the right to petition government.

14 M.R.S.A. § 556. There is no question that the statements made by the Defendants fall within the scope of this coverage. As discussed below, the statements by each of the individuals was made for the purpose of encouraging "consideration or review" by an "executive body" of the events that the Defendants had witnessed involving Ms. Godin. Similarly the statements were made for the purpose of "enlist[ing] public participation in an effort to effect such consideration." *Id.*

In the recent decision of *Schelling v. Lindell*, 2008 ME 59, 942 A.2d 1226, the Law Court made it clear that the scope of communications covered by § 556 was very broad:

> As is clear from the language of section 556, the Legislature intended to define in very broad terms those statements that are covered by the statute. Recently, we recognized that broad construction when we construed the meaning of petitioning activity liberally to hold that it was broad enough to encompass a citizen's published communication to newspapers aimed at influencing the outcome of a contractual dispute between the City of South Portland and a contractor.

*Lindell*, 2008 ME 59, ¶ 12, 942 A.2d at 1230 (citing *Maietta Constr. Inc. v. Wainwright*, 2004 ME 53 ¶ 7, 847 A.2d 1169, 1173).

13

If a letter to the editor published in a newspaper and intended to influence a commercial contract dispute involving a municipality is protected by § 556, there can be no serious dispute that statements made to the Department of Health and Human Services, the State Police, a school board or those in attendance at a school board meeting, are equally covered by that provision. The Department of Health and Human Services and the State Police are plainly "executive bodies," and the statements made to them were so made for the purpose of "encourag[ing] consideration or review of an issue" (i.e., Godin's conduct). Similarly, any statements made to the public at a school committee meeting or otherwise were made to "enlist public participation in an effort to effect such consideration." All those actions are protected by the Anti-SLAPP statute.

        **3.     Plaintiff Cannot Show Absence Of "Any Reasonable Factual Support" For Defendants' Statements, Thus § 556 Mandates Dismissal of the Present Claims.**

The Defendants' respective declarations make clear that the Plaintiff simply cannot meet her burden of demonstrating that any of the Defendants made the allegedly offending statements "without any reasonable factual support." Importantly, the issue in a § 556 motion is whether the allegedly defamatory statements were made with a *reasonable* factual basis. 14 M.R.S.A. § 556. Thus, the court in such a motion is not to decide whether the statements made by the Defendants were substantively true, but rather whether -- taking the evidence and drawing all inferences in favor of Defendants -- those Defendants had a reasonable factual belief in the truth of the statements. There is no question but that the Defendants had a reasonable factual basis for the statements they made in this case.

As demonstrated by the above factual summary, each of the Defendants made the statements they did based on their own personal observations. After having observed activity of the Plaintiff they believed was potentially abusive, Defendants alerted the proper authorities of what they had seen. This fact pattern is strikingly similar to that which arose in the case of *Maietta Construction Company v. Wainright* before the Maine Law Court, in which the allegedly defamatory statements were based upon the personal observations of one of the defendants who witnessed the plaintiff engage in suspicious activity. *Maietta Const Co. v. Wainright*, 2004 ME 53, ¶ 8, 847 A.2d 1169, 1173. Although the plaintiff disputed the truth of the defendant's statements, the Law Court held that the personal observations on which the defendant relied in formulating his beliefs provided reasonable factual support and a "legitimate basis" for his petitioning activity. *Id.* In this case, the statements were likewise made by the Defendants based on what they personally observed. There can be no doubt but that Godin cannot show that the Defendants made their statements "without any reasonable factual support."[2]

In addition, the Plaintiff -- who at the time of these events was a public school principal -- was a public official.[3] As a result, in order to win her defamation claim, Godin must show sufficient evidence to meet the standard of *New York Times v. Sullivan*, 376 U.S. 254 (1964).

---

[2] As noted, this is especially true given that, when deciding whether there was a reasonable factual basis for a defendant's petitioning activities, the "evidence is viewed most favorably to the moving party." *Maietta*, 2004 ME 53, ¶ 8, 847 A.2d 1169, 1173.

[3] The Supreme Court has held that "public officials" are those public employees "who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). While Maine courts have not yet had the opportunity to address whether high school principals are public officials, other courts in nearby jurisdictions have held that they are for reasons that are persuasive and equally applicable here. *See, e.g., Jee v. N.Y. Post Co.*, 671 N.Y.S.2d 920, 924 (N.Y. Sup. Ct. 1998) (holding that a principal is a public official in part because of "[t]he importance of education to society and the legitimate concern that the public has in seeing that the educational process is properly administered"); *Palmer v. Bennington School Dist.*, 159 Vt. 31, 37 (Vt. 1992) (finding that a principal is a public figure "[b]ecause of the crucial role of public education in American society").

Under *Sullivan*, a public-official plaintiff can succeed in a defamation claim only if the plaintiff shows that the allegedly defamatory statements were made with constitutional malice. *Id.* This means that Godin must show that the statements made by the Defendants were not only false but were made with either the knowledge that they were false or with reckless disregard as to whether the statements were true or false. *Id*. To establish actual malice or reckless disregard for the truth, Godin must show that the Defendants "in fact entertained serious doubts as to the truth" of the statements they made. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). In the context of this case, this standard creates an even higher hurdle for Godin under § 556. Under § 556, she must show that the Defendants were "without any reasonable factual support" for their individual statements. But the "factual support" Defendants must have in the context of a public-figure case is reduced even further, since in a public-figure case the defendant is liable only if she made statements as to which she "entertained a serious doubt." Thus, the plaintiff can defeat a § 556 motion only if she can show that statements made by each of the Defendants were "without any reasonable factual support" sufficient to overcome a "serious doubt" as to the truthfulness of the statements.

Based on the affidavits of the three individuals, Godin cannot meet that test. The statements of the Defendants were based on their own personal observations which led them to believe that Ms. Godin's actions were inappropriate and potentially abusive. As such they are clearly sufficient to provide a full defense and warrant dismissal of this Complaint.

### B. COUNT III OF THE COMPLAINT MUST BE DISMISSED BECAUSE IT IS BASED ON THE SAME ALLEGEDLY DEFAMATORY STATEMENTS UNDERLYING COUNT IV.

The foregoing analysis, facially applicable to Plaintiff's Defamation claim, applies with equal force to Count III, Plaintiff's claim for tortious Interference with Advantageous Contractual Relationships. It is clear from the allegations in the complaint that Count III is based on the exact same speech-related and petitioning conduct as the defamation claim. Indeed, the *only* conduct about which the Plaintiff complains against the individual Defendants in the lawsuit is speech–related and involves petitioning the government out of legitimate concerns. Indeed, by its plain terms, § 556 applies to civil claims without restrictions as to the nature of the claim. 14 M.R.S.A. § 556. The important inquiry for § 556 purposes is the nature of the underlying conduct, not the nature of the cause of action through which that conduct is attacked. *See id.* (noting that "civil claims" should be dismissed where they are "based on the moving party's exercise of [its] right of petition"). Both Maine and Massachusetts courts have, when given the proper opportunity, dismissed tortious interference claims under their states' respective anti-SLAPP acts. *Maietta*, 2004 ME 53, ¶ 1, 847 A.2d at 1171; *North American Expo. Co. v. Corcoran*, 452 Mass. 852, 869 (Mass. 2009) (dismissing tortious interference claim in part because it "clearly ar[ose] out of protected petitioning activity")[4]. For all these reasons and those discussed above, this Court should dismiss Count III of the Complaint alleging tortious interference pursuant to § 556 along with Count IV.

---

[4] The Massachusetts anti-SLAPP statute, MASS. GEN. LAWS ch. 231, § 59H, is virtually identical to Maine's § 556, and thus Maine courts refer to Massachusetts decisions to clarify the meaning of the Maine statute. *See, e.g., Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 15, 772 A.2d 842, 848 (noting the similarity between the two provisions and citing approvingly a decision of the Massachusetts Court of Appeals).

## CONCLUSION

For all the above-stated reasons, the Court should dismiss Plaintiff's Complaint against the Defendants pursuant to 14 M.R.S.A. § 556 and should award Defendants their costs and attorneys' fees incurred in relation to this action, and should grant such other and further relief as the Court deems just and appropriate.


Dated: May 4, 2009                    /s/ John M.R. Paterson
                                      John M.R. Paterson, Esq., Bar No. 1400
                                      Eben M. Albert-Knopp, Esq., Bar No. 4311
                                      Attorneys for Defendant Patty Schencks

                                      BERNSTEIN SHUR
                                      100 Middle Street
                                      Portland, Maine 04101
                                      207-774-1200


Dated: May 4, 2009                    /s/ David A. Strock
                                      David A. Strock
                                      Attorney for Defendant Donna Metta

                                      FISHER & PHILLIPS
                                      400 Congress Street
                                      4th Floor
                                      Portland, ME 04101
                                      (207) 774-6001


Dated: May 4, 2009                    /s/ John B. Lucy
                                      John B. Lucy
                                      Attorney for Defendant Joleen Nicely

                                      RICHARDSON, WHITMAN, LARGE & BADGER
                                      One Merchants Plaza, Suite 603
                                      Bangor, ME 04402
                                      (207) 945-5900

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing Special Motion to Dismiss on all counsel of record in this matter by filing this motion with the Clerk of the Court pursuant to the ECF filing system which system will make automatic service on such counsel.


Dated: May 4, 2009                     /s/ John M.R. Paterson
                                       John M.R. Paterson