**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | |
|---|---|
| PAT GODIN, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MACHIASPORT SCHOOL )<br>DEPARTMENT BOARD OF )<br>DIRECTORS, )<br>)<br>    Defendant. | Docket no. 1:09-cv-00077-NT |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT IN PART**

**INTRODUCTION**

On June 6, 2008, Plaintiff Pat Godin was terminated from her position as principal of the Fort O'Brien School in Machiasport, Maine. The Plaintiff commenced this action against School Union 134,[1] the Machiasport School Department Board of Directors, and three individuals[2] seeking compensatory and punitive damages associated with her termination. The Plaintiff complains of a violation of the Fourteenth Amendment under 42 U.S.C. § 1983 (Count I), brings a

---

[1] School Union 134 was dismissed from the action on an unopposed motion by the Plaintiff. Order Granting Motion to Dismiss School Union 134 as Party (Docket no. 22).

[2] All claims against the individual defendants have been voluntarily dismissed. Order Granting Consent Motion to Dismiss Defendants Nicely, Schencks and Metta. (Docket no. 80).

breach of contract claim (Count II), and seeks punitive damages (Count V).[3] The Defendant has moved for summary judgment on Counts I, II and V. The Court concludes that there are genuine issues of material fact on Plaintiff's § 1983 and breach of contract claims and DENIES the Defendant's Motion for Summary Judgment as to Counts I and II. As there is no genuine dispute as to the liability of the Defendant for punitive damages, the Court GRANTS the Defendant's Motion for Summary Judgment on Count V.

**FACTS**

The following facts are drawn from the parties' competing statements of material fact filed in accordance with Local Rule 56 and from the record cited in support of these statements. *See Doe v. Solvay Pharms., Inc.*, 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the mandatory procedure for establishing factual predicates needed to support or overcome a summary judgment motion). All facts "supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . . The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." D. Me. Local R. 56(f). The Court recounts the facts of the case in the light most favorable to the Plaintiff's theory of the case, consistent with record support. *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 17 (1st Cir. 2002). The underlying facts are found in the Defendant's Statement of Material Facts

---

[3] Counts III and IV asserting interference with advantageous contractual relationships and defamation were against only the individuals and were dismissed when the individual defendants were dismissed. Consent Motion to Dismiss (Docket no. 79).

2

("DSMF," Docket no. 85); the Plaintiff's Opposing Statement ("POS," Docket no. 94) and the Defendant's Reply Statement ("DRS," Docket no. 96).

The Machiasport School Department Board of Education (hereinafter "Defendant") operates the Machiasport School Department, a municipal school district, consisting of a single elementary school, the Fort O'Brien School. (DSMF at ¶¶ 1-2). In August, 2006, Plaintiff was hired by the Defendant for a half-time principal position at Fort O'Brien School for the 2006-2007 school year. (DSMF at ¶¶ 8, 10). The Plaintiff is certified to teach health, physical education, and gifted and talented. (POS at ¶ 44).

When the Plaintiff began at Fort O'Brien School in 2006, there were eight teachers on staff and 84 students enrolled in the school. (DSMF at ¶ 11). The Plaintiff believed that she had a good relationship with the school board and the school staff. (DSMF at ¶ 13).

Despite the Plaintiff's perception, in the spring of 2007, during the Plaintiff's first year as principal, Superintendent May Bouchard received 30 complaints about the Plaintiff from 12 staff members at the school. (DSMF at ¶ 14). As a result of these complaints, Superintendent Bouchard hired a facilitator to resolve the problems between the school staff and the Plaintiff. (DSMF at ¶ 15); (POS at ¶ 49). The facilitator concluded that the staff and the Plaintiff would never be able to work together. (DSMF at ¶ 16).

Superintendent Bouchard next brought in the school's attorney to speak with the staff about their obligations. (DSMF at ¶ 17). The attorney's efforts to work with

3

the staff were also unsuccessful. (DSMF at ¶ 18). In addition to the Plaintiff's problems with the school staff, some parents of Fort O'Brien students were displeased with the Plaintiff over her replacement of a kindergarten substitute teacher. (POS at ¶ 52).

Despite the difficulties, at the end of this first year, the Defendant offered the Plaintiff a new contract and a raise. (DSMF at ¶ 20). The Plaintiff did not sense that the school staff had any complaints about her during her second year. (DSMF at ¶ 22).

At a regularly scheduled school board meeting on March 4, 2008, Superintendent Bouchard reported on a projected $300,000 decrease in state funding for the coming fiscal year. (POS at ¶ 52). At the same meeting, the Defendant unanimously approved a new, three-year contract for the Plaintiff, a salary raise, and an additional stipend for the Plaintiff for building maintenance. (DSMF at ¶ 25); (POS at ¶ 54).

After receiving news of the decreased state subsidies, the Defendant began working with the Plaintiff to budget for the shortfall and asked the Plaintiff to prepare a matrix for the reduction in force ("RIF") of teachers. (DSMF at ¶ 28); (POS at ¶ 57). The Plaintiff considered eliminating two or three teachers and ultimately identified $96,240 in budget cuts. (DSMF at ¶ 29-30). Initially, the Plaintiff was not a target of the budget-related RIF. (DSMF at ¶ 31).

At the regularly-scheduled school board meeting on April 8, 2008, 66 people attended, many to complain about the Plaintiff. (POS at ¶¶ 58-59). The complaints

focused on allegations that the Plaintiff had physically abused two students and had created a negative atmosphere at the school. Some alleged that the Plaintiff's presence was causing parents to transfer their children to other schools. (POS at ¶ 58). Following an executive session to discuss the parents' concerns, Superintendent Bouchard placed the Plaintiff on paid administrative leave pending an investigation of the allegations. (POS at ¶ 59).

At the request of Superintendent Bouchard and the Defendant, consultant Omar Norton was hired to investigate the allegations. (POS at ¶ 63). Norton interviewed school staff, parents, and other community members who had concerns about the Plaintiff. (POS at ¶ 63). Norton's May 2008 report confirmed widespread dissatisfaction with the Plaintiff and recommended her dismissal. (POS at ¶ 63).

Jonathan Goodman, an attorney for the Defendant, investigated the allegations that the Plaintiff had abused the two students. His report, dated June 4, 2008, concluded that the abuse charges were not supported by evidence and did not constitute just cause for termination. (POS at ¶¶ 69, 75); (DRS at ¶ 75).

The Defendant believed that replacing the Plaintiff's position with a ¼ time principal and ¾ time teaching position would save money. (DSMF at ¶ 33); (POS at ¶ 90). The parties dispute whether the Defendant offered the Plaintiff this new position and whether there were overall savings to the school district as a result of the restructuring.

On or about June 6, 2008, Superintendent Bouchard notified the Plaintiff that her position was being eliminated due to budgetary constraints and that she

5

would be replaced by a teaching principal. (DSMF at ¶ 37). The Defendant's stated reason for terminating the Plaintiff was financial. (DSMF at ¶ 36). The Plaintiff was given 90 days notice, but was not offered the opportunity to appear and be heard before she was terminated. (DSMF at ¶ 38); (POS at ¶ 91).

The Plaintiff's contract contained a provision allowing the Board to terminate the contract and eliminate the principal's position "when budgetary limitations or other changes in local conditions warrant[ed]. . . . " (Docket no. 85-5 at ¶ 9). The Plaintiff's contract also included a provision allowing termination "for cause," which required written notice and a hearing. (Docket no. 85-5 at ¶¶ 9, 11).

**SUMMARY JUDGMENT STANDARD**

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution would "affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must demonstrate that there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (citing F. R. Civ. P. 56(c)). That is, the Court

6

must credit all inferences favorable to the nonmovant that could reasonably – without speculation – be drawn from the facts. *Merchants Ins. Co. v. U.S. Fid. and Guar. Co.*, 143 F.3d 5, 7 (1st Cir. 1998). If the facts in the record and the favorable inferences that could reasonably be drawn therefrom could support a verdict for the nonmoving party, then summary judgment must be denied and the case permitted to proceed to trial. *ATC Realty, L.L.C. v. Town of Kingston*, 303 F.3d 91, 94 (1st Cir. 2002).

## DISCUSSION

In its Motion for Summary Judgment, the Defendant makes five claims: (1) that no award of punitive damages may be made against the Defendant; (2) that the Defendant is entitled to summary judgment on the Plaintiff's breach of contract claim because it is undisputed that there was a change in local conditions; (3) that the Plaintiff's § 1983 claim is barred by her failure to exhaust state law remedies; (4) that the Plaintiff's due process claim must fail because there are no facts establishing a pattern or practice sufficient to give rise to institutional liability under § 1983; and (5) that the Plaintiff has not established a property interest in continued employment and therefore is not entitled to due process. The Court will address the Defendant's arguments as they pertain to each count of the Complaint.

## I. Violation of 42 U.S.C. § 1983 (Count I)

"Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law." *Santiago v. Puerto Rico,* 655 F.3d 61, 68 (1st Cir. 2011) (quoting *Redondo-Borges v. U.S. Dep't of HUD*, 421 F.3d 1, 7 (1st Cir. 2005)). "[T]o make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued." *Id.*

In the instant case, the Plaintiff's § 1983 claim alleges that the Defendant's conduct in terminating her position as principal without notice and a hearing deprived her of her Fourteenth Amendment right to procedural due process.[4] "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

### A. Plaintiff's Property Interest

The Plaintiff alleges that she had a property interest in continued employment. The existence of a property interest is a matter of state law. *See Harron v. Town of Franklin,* 660 F.3d 531, 537 (1st Cir. 2011). Such a property interest is created when state laws, rules, or understandings create a legitimate

---

[4] The Fourteenth Amendment provides in relevant part: "nor shall any state deprive any person of life, liberty, or property, without due process of law . . . " U.S. Const. amend. XIV, § 1.

8

entitlement to continued employment. *Roth*, 408 U.S. at 577 (1972); *Perry v. Sindermann*, 408 U.S. 593, 602 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972).

The First Circuit "consistently has held that an employee who under state law can be terminated only for 'just cause' has a constitutionally protected property interest in his employment." *Whalen v. Mass. Trial Court*, 397 F.3d 19, 24 (1st Cir. 2005) (citations omitted); *Cummings v. S. Portland Hous. Auth.*, 985 F.2d 1, 2 (1st Cir. 1993) (same). An at will employee does not have a property interest in continued employment that is cognizable under the Due Process Clause of the 14th Amendment. *Cummings*, 985 F.2d at 2.

Maine law provides procedural protection for principals. *See* 20-A M.R.S.A. §§ 13301-13305 (2008). Section 13304 requires notice and a hearing prior to discharge of a principal for cause.[5] Section 13305, however, gives a school board the right to eliminate a principal's position without a hearing if local conditions change.[6] The Maine Law Court, construing a provision applicable to teachers that is virtually identical to section 13305, held that school boards must act in good faith when

---

[5] 20-A M.R.S.A. § 13304 (2008) provides:
**Dismissal**
In accordance with this section, a school board may dismiss a principal before the expiration of the contract term.
1. **Requirements.** The principal may be dismissed only:
   A. After consideration of a recommendation of the superintendent;
   B. For cause;
   C. After due notice and investigation;
   D. After a hearing before the school board, if requested; and
   E. By a majority vote of the school board.

[6] 20-A M.R.S.A. § 13305 (2008) provides:
The right to terminate a contract, after due notice of 90 days, is reserved to the school board when changes in local conditions warrant the elimination of the principal's position for which the contract was made.

9

eliminating a teacher's position under the "change in local conditions" rationale. *Paradis v. Sch. Admin. Dist. No. 33 Sch. Bd.*, 446 A.2d 46 (Me. 1982) ("*Paradis I*").[7] Based on *Paradis I*, the Court concludes that state law imposed a duty on the Defendant to act in good faith when using the RIF rationale to eliminate the Plaintiff's position.

Plaintiff's contract mirrors state law. Paragraph 11 of the Plaintiff's contract, dealing with terminations "for cause," requires notice and an opportunity to be heard.[8] Paragraph 9 reserves to the Board the right to eliminate the Plaintiff's position when budgetary limitations or a change in local conditions so warrant.[9] Of course, "every contract imposes on each party a duty of good faith and fair dealing

---

[7] In *Paradis I*, the plaintiff, a teacher whose contract had been terminated under the predecessor statute to 20-A M.R.S.A. § 13201, brought a breach of contract claim against her school board. Paradis claimed that the board's decision to economize was not a change of local conditions within the meaning of the statute. *Id.* at 51. Plaintiff also claimed that her position had not actually been eliminated because all of the courses that she taught were still taught after her contract was terminated. *Id.* at 48. The Law Court held that the board had an implied duty to act in good faith when exercising its power to terminate for a change in local conditions.

In *Paradis v. Sch. Admin. Dist. No. 33 Sch. Bd.*, 462 A.2d 474 (Me. 1983) ("*Paradis II*"), on appeal from its remand in *Paradis I*, the Law Court upheld the Superior Court's finding that even though there had been a change in local conditions, the school board had not acted in good faith in eliminating the plaintiff's teaching position. *Id.* at 479.

[8] Paragraph 11 of the Plaintiff's contract provides in pertinent part:
> Termination of Employment Contract – This contract may be terminated . . . by the Board, after consideration of a recommendation of the Superintendent, upon discharge for cause. . . . Notice of discharge for cause shall be given in writing to the Principal, who shall be entitled to a hearing before the Board. . . . The Principal shall be subject to discharge in accordance with applicable statutes of the State of Maine.

[9] Paragraph 9 of the Plaintiff's contract provides:
> Elimination of Position. The Board and the Principal agree that the right to terminate this contract, after due notice of ninety days, is reserved to the Board when budgetary limitations or other changes in local conditions warrant the elimination of the administrative position for which this contract was made.

10

in its performance and its enforcement." Restatement (Second) of Contracts §205 (1982).

The First Circuit has "recognized a limited 'reorganization exception' to due process that eliminates the need for a hearing where a reorganization or other cost-cutting measure results in the dismissal of an employee." *Whalen*, 397 F.3d at 24. However, even when budgetary considerations motivate a lay-off, if performance factors play a role in eliminating a position, the plaintiff has a right to "minimal procedural protections of notice and an opportunity to respond." *Id* at 26.

Both under the terms of her contract and under state law, the Plaintiff had a legitimate entitlement to continued employment that constituted a protected property interest <u>unless</u> the school board in good faith concluded that elimination of the position was necessary because of a change in local conditions. Accordingly, whether the Plaintiff had a property interest hinges on whether the Plaintiff's termination was part of an entirely neutral RIF or was based on her performance.

The analysis, at this stage of the proceedings, must be viewed in the light most favorable to the Plaintiff. Fully aware of a looming budgetary shortfall, the Defendant decided to renew the Plaintiff's contract in March of 2008. Only after the April 2008 school board meeting, where members of the community showed up *en masse*, necessitating an executive session to discuss allegations that the Plaintiff had physically abused two students, did the Defendant decide to terminate the Plaintiff. The Defendant's decision also came after Norton's May 2008 report, which found widespread dissatisfaction with the Plaintiff and recommended that the

Defendant remove her. Just two days after the Goodman report was written, the Superintendent informed the Plaintiff of the Defendant's decision to eliminate her position. Even though Goodman's investigation revealed no evidence supporting the abuse allegations, his June 4, 2008 report may also support the Plaintiff's theory of the case. It is reasonable to infer that the Defendant, faced with mounting community anger but with insufficient evidence to support a "for cause" termination, could have used the RIF provision to terminate the Plaintiff. While it is undisputed that there was a legitimate need to cut the budget, a reasonable inference can be drawn that the Defendant also took into account the Plaintiff's performance in deciding which position to eliminate.

Because the Plaintiff has established sufficient facts to support a reasonable conclusion that the Defendant considered her performance in executing the RIF, she has established a triable issue as to whether she was deprived of her interest in continued employment without due process of law.

**B. Municipal Liability**

The Defendant argues that because the Plaintiff has failed to establish a custom or policy of eliminating the positions of unpopular employees, she has not alleged facts sufficient to establish municipal liability under § 1983.

It is well-settled that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). The Supreme Court later elaborated that:

> *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts "of the municipality" – that is, acts which the municipality has officially sanctioned or ordered.
>   With this understanding, it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances. No one has ever doubted, for instance, that a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body – whether or not that body had taken similar action in the past or intended to do so in the future – because even a single decision by such a body unquestionably constitutes an act of official government policy. *See, e.g., Owen v. City of Independence*, 445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) (City Council passed resolution firing plaintiff without a pretermination hearing).

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). The *Pembaur* Court explained that the "[a]uthority to make municipal policy may be granted directly by a legislative enactment," *id.* at 483, and that ultimately "whether an official has final policymaking authority is a question of state law." *Id. See City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) (holding that the question of whether a municipal official is a policymaking official is a matter of state law to be decided by the court). The court must identify who speaks with final policymaking authority for the specific action. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989).

In this case, state law vests all decisions regarding the dismissal or termination of a principal's contract in the school board. 20-A M.R.S.A. §§ 13304-

13

13305 (2008). The Court finds that under state law, the Defendant is the final policymaker for employment decisions relating to principals in the Machiasport School Department. The decision to eliminate the Plaintiff's position is therefore municipal policy for which the Defendant may be liable under § 1983.

### C. Exhaustion of State Remedies

The Defendant incorrectly argues that the Plaintiff's failure to pursue the 80B appeal process under the Maine Rules of Civil Procedure is fatal to her claim. It is settled law that there is no exhaustion requirement for § 1983 claims.

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.

*Monroe v. Pape*, 365 U.S. 167, 183, 81 S. Ct. 473, 5 L. Ed. 2d 492 (1961); *Rogers v. Okin*, 738 F.2d 1, 5 (1st Cir. 1984) ("A plaintiff alleging a cause of action under 42 U.S.C. § 1983 need not first exhaust state judicial remedies.").

The Defendant is also incorrect that the 80B appeal process is adequate to satisfy due process. Generally, *pre*-deprivation process is necessary to satisfy due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("We have described the root requirement of the Due Process clause as being that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.") (emphasis in original) (internal quotations omitted). There is an exception to the pre-deprivation process requirement, however it is not applicable here.

14

The Supreme Court has held that when the infringement of a property interest is caused by a random and unauthorized act of a state employee, rather than an established state procedure, post-deprivation process may suffice. *See Parratt v. Taylor*, 451 U.S. 527, 539, 543-44, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1998) (explaining that where there is necessity for quick state action or where it would be impractical to provide pre-deprivation process, post-deprivation remedies can be adequate); *Hudson v. Palmer*, 468 U.S. 517, 532-33, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) ("[W]here a loss of property is occasioned by a random, unauthorized act by a state employee, rather than by an established state procedure … it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.") (internal quotations omitted); *Lowe v. Scott*, 959 F.2d 323, 340 (1st Cir. 1992) ("[W]hen the state official is not acting pursuant to established state procedure, the state is not in a position to provide anything other than such postdeprivation remedies[.]").

Here, however, the decision to eliminate the Plaintiff's position followed an established state procedure. Because the Defendant had broad discretion under state law to deprive employees within the Machiasport School District of their property interest in continued employment, they also possessed the concomitant duty to ensure pre-deprivation procedural protections. *Zinermon v. Burch*, 494 U.S. 113, 135, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990) (holding that where employees at state mental health hospital had broad power to admit patients, the Constitution imposed on them a duty to see that no deprivation occured without adequate

15

procedural protections). *See Krennerich v. Inhabitants of the Town of Bristol*, 943 F. Supp. 1345, 1355 (D. Me. 1996) (requiring pre-deprivation process where deprivation of property interest in employment was the result of predictable, authorized state conduct). The Plaintiff's termination was not the type of random and unauthorized state action that falls under the *Parratt-Hudson* doctrine.

The Plaintiff is not required to pursue existing state appeals procedures before she can bring a suit under § 1983. Not only is there no exhaustion requirement in a § 1983 suit, but the Supreme Court has made clear that providing a post-deprivation remedy is only adequate when the deprivation is the result of random, unauthorized state conduct, which is not the case here.

## II. Breach of Contract (Count II)

The Plaintiff argues that the Defendant styled a "for cause" termination as a position elimination to avoid holding the hearing required under paragraph 11 of her contract. As the Court has already concluded in Section II.A, *supra*, based on the facts in the record and the reasonable inferences that can be drawn in the Plaintiff's favor therefrom, a reasonable jury could find that the Defendant acted in bad faith in eliminating the Plaintiff's position, and therefore breached the Plaintiff's contract.

### III. Punitive Damages (Count V)

The Plaintiff concedes that the Defendant, a municipal entity, is immune from punitive damages in an action under 42 U.S.C. § 1983. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 191 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), makes clear that municipal entities are immune from punitive damages in § 1983 actions.

### CONCLUSION

The Court finds that a triable issue remains as to whether the Plaintiff was fired in bad faith in breach of her employment contract and as to whether the Plaintiff was deprived of her property interest in continued employment without due process of law in violation of the 14th Amendment and 42 U.S.C. § 1983. Accordingly, Defendant's Motion for Summary Judgment as to Counts I and II of the Complaint is DENIED. Neither party disputes that punitive damages are unavailable against a municipality. Therefore, Defendant's Motion for Summary Judgment on COUNT V is GRANTED.

SO ORDERED.

    /s/ Nancy Torresen
    NANCY TORRESEN
    UNITED STATES DISTRICT JUDGE

Dated this 21st day of December, 2011.